[Civ. No. 8391. Third Dist. June 23, 1954.]

JAMES FAULKNER et al., Plaintiffs and Appellants, v. C. R. BURTON et al., Defendants and Appellants.

Jack Flinn and Jackson E. Nichols for Plaintiffs and Appellants.

James D. Meredith for Defendants and Appellants.

VAN DYKE, P. J.—The complaint in this action contained nine separate counts in each of which the plaintiff named therein brought action against C. R. Burton and Local Union

No. 118, Bridge, Structural and Ornamental Iron Workers, a labor union. All of the counts concern the same general subject matter and the substantial allegations thereof may be stated as follows: The plaintiffs were all members of either the defendant union or of other local unions of bridge, structural and ornamental iron workers who had separately signed contracts with Pollock-Stockton Shipbuilding Company, a corporation, hereinafter called "Pollock-Stockton." This corporation was engaged in performing a contract with the United States at Samar, Philippine Islands, and in their several contracts plaintiffs agreed with Pollock-Stockton to do the work of iron workers at stipulated wages or salaries. The contracts covered in detail the contractual obligations of the employer and the employee and bound the employee to perform labor for a minimum of one year at Samar or at such other site in the Pacific war theater where Pollock-Stockton might be performing contracts for the Navy. All of the locals to which the plaintiffs belonged were members of the International Association of Bridge, Structural and Ornamental Iron Workers, a labor organization made up of local unions. The contracts obligated Pollock-Stockton to furnish transportation to and from the job and the stipulated wages began on embarkation and continued until the men were returned to this country. The contract of plaintiff Faulkner was executed April 20, 1946, and most of the plaintiffs executed their contracts within that month. All of the contracts were in the same general form. The men went to Samar and those first arriving worked for about nine and one-half months, at which time all of the plaintiffs quit work in breach of their contracts with Pollock-Stockton and returned to the United States. They all alleged that their breach was caused by the fraudulent conduct of defendant Local Union No. 118 and of Burton who was the agent of the defendant union. On January 28, 1947, Burton wrote a letter to Faulkner, reading as follows:

"January 28, 1947

"Dear Sir and Brother:

"You are hereby ordered to resign your position and return to the United States on or before February 28, 1947, or stand trial for violating the Working Rules by working for time and a half and working with non-union men below the scale of pay.

"This applies to all members of the International and they will be so advised by their Locals.

"With best wishes, I am

Fraternally yours,

(Signed)   C. R. Burton
C. R. Burton, Bus. Rep.
Iron Workers Local #118"

Plaintiffs allege, in view of the relationships between each of them and their local unions and the International, that this letter not only ordered plaintiff Faulkner to resign his position and return to the United States, but that it also told him and them, through him, that they were all violating union rules and that if they continued in their employment they would be subject to the following detriments and punishments as members of organized labor, to wit: They would be tried by their local unions for the subject violations, would lose their membership in the unions and in the International, and be classified as nonunion men. Plaintiffs alleged that these statements and the necessary inferences therefrom were known by Burton to be false, were made in bad faith by him and for the purpose of inducing the several plaintiffs, including Faulkner, to breach their contracts of employment on penalty of losing their union standing without which all alleged they would be unable to obtain work in their trade. Plaintiffs aver reliance upon Burton's statements and representations and that, so relying, each breached his contract with Pollock-Stockton and left his work because of Burton's threats and representations which the complainants aver were made without any authorization or approval from the International; that because they thus breached their contracts with Pollock-Stockton plaintiffs suffered damage through loss of employment and loss of transportation to and from the job and lost other benefits that would have inured to them had they finished out their minimum employment of one year. For these damages they sought judgment against Burton and Local Union No. 118. Defendants answered, placing in issue the allegations of fraudulent conduct and ensuing damage and pleading the statute of limitations.

The trial court gave Faulkner judgment for something in excess of $3,000 and denied relief to the other eight plaintiffs. From this judgment Burton and Local Union No. 118 appeal and the eight plaintiffs who were denied relief likewise appeal.

We shall first consider the appeal of Burton and the local. These appellants contend that the action was barred by the statute of limitations and that by virtue of an assignment made by Faulkner of his claims against Pollock-Stockton and of the release he signed when those claims were compromised, his cause of action herein sued upon was lost. They further contend that Burton's letter spoke the truth and could not therefore support a judgment based on its alleged fraudulency. Lastly, these appellants contend that because Faulkner was working beyond the jurisdictional limits of the defendant local plaintiff Faulkner could not and, therefore, did not rely upon the letter in breaching his contract. Because we have concluded that upon the record here Faulkner's action was barred, we deem it unnecessary to discuss any other contention brought against the validity of the judgment he obtained. The requisites of pleading and proof when, from the face of the complaint, it appears that the action is brought more than three years after the perpetration of the fraud are well settled. Out of the many cases that might be referred to we quote from the case of *Haley* v. *Santa Fe Land Imp. Co.*, 5 Cal.App.2d 415, 420 [42 P.2d 1078] :

''In cases where relief is sought from fraud, by action commenced more than three years after the perpetration of the fraud, the plaintiff is held to stringent rules of pleading and evidence; and especially must there be distinct averments as to the time when the fraud was discovered and what the discovery is, so that the court may clearly see whether by ordinary diligence the discovery might not have been sooner made. A general allegation of ignorance at one time and of knowledge at another is of no effect. If the plaintiff made any particular discovery it should be stated when it was made, how it was made and· why it was not made sooner. A party seeking to avoid the bar of the statute must aver and show that he used due diligence to detect the fraud; and if he had the means of discovery in his power he will be held to have known it. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite reasonable diligence. (*Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 P.2d 268].) He must set forth the times and circumstances under which the facts constituting the fraud came to his knowledge, so that the court may determine from the allegations of the complaint whether the discovery was within that period. (*Galusha* v. *Fraser,* 178 Cal. 653, 657 [174 P.

311].) 'Discovery' and 'knowledge' are not convertible terms; and whether there has been a proper allegation as to a 'discovery' of the facts 'constituting the fraud' within the meaning of the statute of limitations is a question of law to be determined by the court from the facts pleaded.''

In his complaint Faulkner alleged merely:

''That on or about the 2nd day of May, 1949, plaintiff learned for the first time that the threats and representations made by the defendants as aforesaid were unauthorized and unapproved by the International Association of Bridge, Structural and Ornamental Iron Workers and that said threats, actions and representations were wholly false and were made in bad faith and for the purpose of persuading and inducing him to violate his contract of employment with Pollock-Stockton Shipbuilding Company, as aforesaid.''

These allegations were generally denied by appellants and by amendment to their answer they pleaded the appropriate statute of limitations. Faulkner's breach of his contract, which he alleged was induced by the fraud of appellants, occurred on February 4, 1947. He commenced his action March 29, 1950, more than one month in excess of three years from the alleged perpetration of the fraud. This cast upon him the burden of properly pleading and effectively proving the facts concerning discovery in accordance with the rules above stated. ■ We will assume that his pleading may be held to be sufficient without additional allegations as to why he did not sooner discover the fraud of which he complains, since no demurrer was specifically directed to the insufficiency of the allegations. But this assumption of sufficient pleadings did not relieve him of the necessities of proof which the rules embrace. When we search the record for proof we find that Faulkner gave no testimony whatever as to when he had discovered the fraud, as to the conditions under which he discovered the fraud on which he sues or as to why fraud did not become known to him sooner than he alleged it did. This proof is not supplied by anything else in the record and indeed it would be difficult to conceive of how such proof could be made in the absence of any testimony whatever from Faulkner upon the subject. We may observe also that Faulkner was one of those who went to Pollock-Stockton to find out if the letter was a fake, that he was at the meeting on Samar when the jurisdiction of Local No. 118 was challenged and spent two weeks at Samar before his boat left. Therefore it clearly cannot be assumed that he had no opportunities

to inquire as to fraud nor that he lacked warning that inquiry ought to be made. For this failure to prove discovery within three years of action brought the judgment in favor of Faulkner must be reversed.

We turn now to the appeals of the eight plaintiffs who were denied recovery. Here the trial court found that they neither relied, nor could have relied, upon Burton's letter to Faulkner when they breached their contracts with Pollock-Stockton. Upon this subject matter the court found that the letter which Burton wrote was addressed personally to Faulkner, that Burton had not intended to have the same read or acted upon by anyone else, that no threat or intimidation contained therein was directed to anyone other than Faulkner and that, while the letter stated that it applied to all members of the International, it also limited this statement by saying that other members would be so advised by their locals and that none of the plaintiffs other than Faulkner were advised by any local or ever received a letter such as that written to Faulkner, excepting only one or two other members of Local No. 118 who are not parties herein. The court further found that Burton was neither careless nor negligent in writing the letter nor wording the same as written and had no intention of threatening or misleading anyone other than Faulkner.

Ordinarily it might be said that in view of the situation existing at Samar, of which Burton was well informed, the writing of such a letter as Burton wrote to Faulkner would greatly disturb other union men working for Pollock-Stockton at the same place and time and under identical contracts, so that it might be supposed the men so situated would act as did the eight plaintiffs, notwithstanding the letter was not addressed to them. To union men their union memberships are of vital importance and, as some of the plaintiffs testified, loss of their memberships would mean it would become well nigh impossible for them to make a living as iron workers. But whether they were entitled to rely upon the statements made in Burton's letter as being applicable to them and, so relying, breach their contracts with Pollock-Stockton without, as the letter indicated they would, receiving any word from their various locals addressed personally to each of them, was an issue of fact to be resolved by the trial court. The trial court found against the eight plaintiffs upon this matter and the question presented here is the usual one, that is, does the record contain substantial support for that find-

ing? We hold that it does. It is supported by these matters appearing in the record: The letter was a personal one addressed to Faulkner only, notwithstanding there were twenty or more union iron workers engaged with Faulkner on the Pollock-Stockton job at Samar. Of this number there were several besides Faulkner who were members of Local No. 118. Yet no plaintiff other than Faulkner received any communication from anyone indicating that he was breaking union rules by continuing on the job or that he might be held responsible by his local if he continued to do so. When the letter was received by Faulkner he exhibited it to a number of iron workers and an impromptu meeting was held at which the matter was discussed. During that discussion one man told the meeting that Local No. 118 had no jurisdiction of any of them since they were within the jurisdiction of the Honolulu local and without the jurisdiction of Local No. 118. There was testimony that a committee was appointed out of those who attended the meeting to wait upon Pollock-Stockton and, as one witness said, to find out whether the letter was a fake or not. It appeared that this committee, upon receiving what they deemed improper consideration by Pollock-Stockton, ceased their efforts to inquire into the matter of Burton's communication. There was also testimony that although nearly thirty men quit work that a number of them were simply "fed up" and went along with the rest. The foregoing supports the court's finding that, notwithstanding the fraudulency of Burton's letter, it was not a cause of the plaintiffs' breaching their contracts and returning home.

The judgment that the eight plaintiffs take nothing is affirmed. The judgment in favor of Faulkner is reversed and the cause as to him is remanded for a new trial.

Peek, J., and Schottky, J., concurred.